IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAYLYNN L. B., <br><br>    Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY,[1] <br> Commissioner of Social Security, <br><br>    Defendant. | Case No. 22-cv-00519-SH |

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kaylynn L. B. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id*. § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on April 26, 2021. (R. 228-31.) Plaintiff alleged she has been unable to work since October 2, 2020,[2] due to conditions including Grave's disease/hyperthyroidism, paroxysmal atrial fibrillation, hypertension, major depressive disorder, anxiety, and abnormal menses. (R. 42, 253.) Plaintiff was 49 years old at the time of the ALJ's decision. (R. 32, 228.) She has a high school education and past relevant work as a stock clerk. (R. 45-46, 254.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 130-33, 140-47.) Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (R. 38-67, 153-54.) The ALJ denied benefits and found Plaintiff not disabled. (R. 16-32.) The Appeals Council denied review on October 24, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[3] Plaintiff now appeals.

---

[2] In her application, Plaintiff alleged she has been unable to work since September 29, 2020. (R. 228.) She later amended her alleged onset date to October 2, 2020. (R. 42.)

[3] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

### III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2023. (R. 19.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, the ALJ found Plaintiff had the following severe combination of impairments: (1) mild degenerative joint disease of the right ankle; (2) mild coronary artery disease and atrial fibrillation with normal LVEF; (3) obesity; (4) depressive disorder; (5) anxiety disorder; and (6) posttraumatic stress disorder. (R. 19-20.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 20-22.)

The ALJ then determined Plaintiff had the RFC to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with the following mental limitations[4]:

> [Plaintiff] can understand, remember, and carry out simple and detailed tasks, but not complex tasks and can adapt to occasional changes in work processes and environment; no production rate pace but can perform end of the day goals; and can tolerate occasional interaction with coworkers, supervisors, and the general public.

(R. 22.) The ALJ provided a recitation of the evidence that went into this finding. (R. 22-30.) At step four, the ALJ found Plaintiff unable to perform her past relevant work. (R. 30.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as price marker, router, housekeeping cleaner, cutter and paster, and call out operator. (R. 30-31.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 32.)

---

[4] Plaintiff does not challenge the ALJ's treatment of her physical limitations.

### IV.   Issues

On appeal, Plaintiff asserts the ALJ erred by: (1) failing to adopt a limitation to "low stress work" purportedly set out by Dr. William Cooper, whose opinion the ALJ found persuasive (ECF No. 13 at 4-12); and (2) failing to sufficiently define Plaintiff's capacity to "perform end of the day goals" (*id.* at 12-14).  Having considered the ALJ's decision and the administrative record, the undersigned finds no error.

### V.   Analysis

#### A.   Incorporation of Dr. Cooper's Findings in the RFC.

First, Plaintiff maintains the ALJ committed reversable error by failing to incorporate one of Dr. Cooper's findings into the RFC. (*Id.* at 4-12.)  Plaintiff argues that because the ALJ found Dr. Cooper's opinion somewhat persuasive, she was under an obligation to include a limitation to "low stress work." (*Id.*)  The undersigned disagrees.

##### 1.   Dr. Cooper's Examination

On June 28, 2021, Plaintiff presented for a consultative examination with William L. Cooper, Ph.D. (R. 511.)  Her chief complaints included depression, anxiety, and being "frequently irritable." (*Id.*)  Relevant to Plaintiff's arguments, after conducting a mental status exam, Dr. Cooper stated his "summary and conclusions," which contained a combination of Plaintiff's self-reported symptoms, results from testing, potential diagnoses, prognoses, and some opinions as to Plaintiff's limitations:

> [Plaintiff] stated her depression began after she was first married and she has been taking medication for the disorder since approximately 2001. Periods of more severe depression do not appear to last as long as one week though they do appear to adversely affect her motivation, mood and social relationships, and interest in self-care.  Her reported symptoms of anxiety suggest generalized anxiety and claustrophobia, though she does not appear to have significant social anxiety.  However, she did report experiencing mild symptoms of posttraumatic stress disorder due to a sexual assault she experienced while in prison.  There were no signs of psychosis.  She appears

5

> to relate adequately to other people for the most part, though she complained about excessive irritability. <u>Her ability to tolerate normal stress appears somewhat limited</u>.
>
> The results of formal mental status testing suggest she has near-average intelligence. She is well-oriented and her recent and remote memory appear intact. She performed adequately on tests of vocabulary development, formal judgment, verbal abstracting ability, visual-spatial skill, and verbal fluency, while she performed below average on tests of fund of information and pace of mental activity. Her immediate recall appears adequate, while she performed somewhat less well on a test of delayed recall. She did not exhibit major impairment of her ability to pay attention and concentrate. She is able to understand simple questions and follow simple directions. She is able to avoid obvious hazards in her environment. She appears able to manage her own funds. Her insight is fair. Her prognosis is guarded.

(R. 514 (emphasis added).)

In her decision, the ALJ summarized Plaintiff's reported symptoms and Dr. Cooper's findings (R. 26-28); noted Dr. Cooper's opinion regarding attention, concentration, tasks, hazards, and money management (R. 28); and found the opinion to be "somewhat persuasive" (R. 28-29). The ALJ then found that Plaintiff "can perform simple and detailed tasks, can adapt to occasional changes in work processes and environment, no production rate pace but can perform end of the day goals, and occasional interaction with coworkers, supervisors, and the general public." (R. 29.) This mirrored the RFC set forth earlier in the ALJ's decision. (R. 22.) Citing Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (Jan. 1, 1985), Plaintiff maintains that without a limitation to "low stress work," however, the RFC was incomplete. (ECF No. 13 at 8-9.)

    **2.    RFC Considerations**

To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what

6

the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1).[5] The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id*. § 404.1520(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).[6] Plaintiff's arguments in this case concern the ALJ's assessment of medical opinion evidence.

### 3. Medical Opinions – Generally

A medical opinion is a statement from a medical source about what a claimant can still do despite their impairment and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions. *Id.* § 404.1513(a)(2). The mental demands of work activities include "understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii). When considering a medical opinion, an ALJ does not

---

[5] *See generally* 20 C.F.R. § 416.945 for Title XVI.
[6] *See generally* 20 C.F.R. § 416.913 for Title XVI.

defer or give any specific evidentiary weight to the opinion. *Id.* § 404.1520c(a).[7] Instead, the ALJ evaluates the "persuasiveness" of the opinion by considering certain factors.[8] *Id.* § 404.1520c(a) & (c).

As a part of this consideration, it is generally improper for an ALJ to "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). To the extent the ALJ is not rejecting the findings, however, she is under no obligation to discuss "every piece of evidence." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (citing *Clifton* in the context of medical opinion evidence). Nor is there any requirement "for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," since it is the ALJ, "'not a physician, [who] is charged with determining a claimant's RFC . . . .'" *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

### 4. Stress Limitations in the RFC

Plaintiff's argument that the ALJ erred by not explaining "why a limitation to 'low stress work' . . . was excluded from the RFC" (ECF No. 13 at 7) is unpersuasive for a number of reasons.

---

[7] *See generally* 20 C.F.R. § 416.920c for Title XVI.

[8] These factors include (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c).

8

First, Dr. Cooper's statement does not appear to be a medical opinion. Dr. Cooper stated that Plaintiff's "ability to tolerate normal stress appears somewhat limited."[9] (R. 514.) This is not a "statement . . . about what [Plaintiff] can still do despite [her] impairment(s) . . . ." 20 C.F.R. § 404.1513(a)(2). Although a closer call, it also does not appear to be a statement regarding "whether [Plaintiff] ha[s] one or more impairment-related limitations . . . in . . . [her] ability to perform mental demands of <u>work activities</u>, such as . . . responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii) (emphasis added). Dr. Cooper's statement is simply too vague and too unmoored from work activities for this Court to find it meets the definition of a medical opinion. *See, e.g.*, *Mathews v. Kijakazi,* No. CV 21-1140, 2022 WL 4535087, at *1 n.2 (W.D. Pa. Sept. 28, 2022) (noting "non-specific references to concentration, interactions, and stress are too vague to transform [a] letter into a medical opinion"); *cf. Roxane D. v. Kijakazi,* No. 21-CV-2656 (JRT/DTS), 2023 WL 2838121, at *3 n.2 (D. Minn. Feb. 13, 2023) (finding that, "while . . . vague and nonspecific," a medical opinion includes a statement that a claimant's "capacity for tolerating stress and pressures typically found in an entry-level workplace appears to demonstrate a slight to occasionally moderate level of impairment"), *R&R adopted sub nom. Dawn v. Kijakazi*, 2023 WL 2496594 (Mar. 14, 2023).

Second, even if Dr. Cooper stated a stress-related "medical opinion"—and even if the ALJ found this opinion persuasive—Plaintiff overstates the ALJ's obligations when she asserts the ALJ was required to include a limitation to "low stress work." As discussed above, there is no requirement that a claimant's RFC parrot each and every opinion set

---

[9] Dr. Cooper did not state, as Plaintiff argues, that she was limited to "low stress work." (ECF No. 13 at 4, 7.)

forth by their physicians. *See Chapo*, 682 F.3d at 1288; *see also Sandra G. W. v. Kijakazi*, No. 20-CV-586-JFJ, 2022 WL 987734, at *4 (N.D. Okla. Mar. 31, 2022) ("The ALJ is not required to 'parrot' the precise descriptions of a claimant's limitations as stated in a medical opinion.").

Finally, Plaintiff fails to show the ALJ actually rejected Dr. Cooper's finding regarding stress. While the ALJ did not restate Dr. Cooper's notation in her otherwise thorough review of his report (R. 26-29), she did discuss Plaintiff's stress-related symptoms elsewhere in her decision (R. 23 ("Plaintiff did not handle stress or changes in routine well")). Contrary to Plaintiff's arguments, the failure to use the word "stress" in the RFC does not equate to a failure to include "work limitations that actually accounted for stress-related deficits and their impact on [Plaintiff's] work capacity . . . ." (ECF No. 13 at 6.) In fact, "the ability to tolerate normal stress does not translate directly to a work-related limitation." *Sandra*, 2022 WL 987734, at *3-4 (rejecting argument that ALJ failed to incorporate Dr. Cooper's finding regarding claimant's "very limited ability to tolerate normal stress"). Here, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple and detailed, but not complex, tasks; the ability to adapt to occasional changes in work processes and environment; no production rate pace but the ability to perform end of the day goals; and the ability to tolerate occasional interaction with coworkers, supervisors, and the general public. (R. 22.) The Court finds these limitations adequately accounted for Dr. Cooper's finding that Plaintiff was "somewhat limited" in her ability to tolerate normal stress.

Plaintiff's citation to SSR 85-15 changes none of this. (ECF No. 13 at 8.) SSR 85-15 notes that, for claimants with mental illness, "reaction to the demands of work (stress) is highly individualized," causing them to "have difficulty meeting the requirements of

10

even so-called 'low-stress' jobs." SSR 85-15, at *6. Because of this "highly individualized" response to work demands,[10] "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job" and, therefore, any "impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id.*

The ALJ in this case set forth Plaintiff's mental capabilities in terms of work-related limitations. (R. 22.) These limitations adequately accounted for Plaintiff's ability to handle stress, in compliance with SSR 85-15. While Plaintiff seems to read SSR 85-15 as requiring, at least, a limitation to "low stress jobs," this does not appear to be the import of the Ruling. Rather, the Ruling notes that even the requirements of "low stress" jobs may not adequately account for a particular claimant's reactions to the "demands of work." SSR 85-15, at *6. Functional impairments must be set forth in work-related limitations that account for a claimant's individualized reaction to stress. This is exactly what the ALJ did here, accounting for Plaintiff's individualized ability to understand, remember, and carry out tasks, adapt to work changes, perform production, and tolerate interpersonal interaction. (R. 22.) Nothing more was required. *See Whitehead v. Berryhill*, No. CIV-17-1353-G, 2019 WL 1407435, at *6 (W.D. Okla. Mar. 28, 2019) (finding "stress-related mental limitations" included "a restriction to remembering and carrying out simple, routine, and repetitive tasks, a limitation to relating to supervisors

---

[10] Examples the Ruling gives for a claimant's individualized response to the "demands of work (stress)" include "getting to work regularly, having their performance supervised, and remaining in the workplace for a full day." SSR 85-15, at *6. These examples, coupled with the language in SSR 85-15 and POMS § DI 24510.061 describing "stress" as simply the "mental demands of work," indicate to this Court that a bare limitation to "low stress work" does not account for work-related mental limitations in the same way the limitations set out in Plaintiff's RFC do.

and coworkers . . . , and a requirement that Plaintiff have no contact with the general public"); *Klein v. Colvin*, 25 F. Supp. 3d 1338, 1344 (D. Colo. 2014) (same); *Watkins v. Colvin*, No. 15-CV-578-PJC, 2017 WL 499684, at *3-4 (N.D. Okla. Feb. 7, 2017) (addressing "stress of day to day interactions" with restriction in coworker and supervisor contact and allowing no interaction with the public); *Martinez v. Berryhill*, No. 1:17-CV-00506-LF, 2019 WL 1331902, at *7 (D.N.M. Mar. 25, 2019) (finding a limitation to "simple, routine and repetitive tasks, occasional contact with coworkers and the general public, and no quotas" reflected a medical opinion that found the claimant would have trouble with "high stress situations").[11]

Plaintiff's reliance on *Parker v. Comm'r, SSA*, 772 F. App'x 613 (10th Cir. 2019) (unpublished)[12] does not help her argument. (ECF No. 13 at 11.) There, the Court found the ALJ erred when it accorded "great" and "significant" weight to various medical opinions under the old regulations, 20 C.F.R. § 404.1527, but reached an RFC that directly conflicted with and/or omitted those findings. *Parker*, 772 F. App'x at 615-16. For example, the ALJ gave "significant" weight to an opinion that found Plaintiff could not work closely with coworkers or supervisors and could only accept infrequent supervision. *Id.* at 615. Yet the ALJ concluded, without explanation, that the claimant <u>could</u> "frequently interact with supervisors and coworkers." *Id.* at 615-16. Similarly, the ALJ

---

[11] The undersigned recognizes that other courts within the circuit have ruled differently on this issue. *See, e.g.*, *Dellafiora v. Colvin*, No. CIV 15-0871 KBM, 2016 WL 9819855, at *5 (D.N.M. Oct. 27, 2016) (collecting cases); *Teresa L. v. Saul*, No. CV 19-1135-JWL, 2020 WL 1547827, at *5 (D. Kan. Apr. 1, 2020). However, these cases were largely either decided under the old regulations for medical opinions or interpreted SSR 85-15 as requiring an opinion's limitation in "stress" to be reflected verbatim in the RFC.

[12] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

failed to include any work-related limitation regarding Plaintiff's impaired ability to respond appropriately to work situations and changes in the usual work setting, a limitation set out in another opinion the ALJ gave "significant" weight. *Id.* at 616. Unlike *Parker*, the ALJ accounted for Dr. Cooper's finding regarding Plaintiff's ability to handle "normal stress." Unlike interactions with coworkers and supervisors, or changes in a work setting, a "somewhat limited" ability to handle normal stress does not "readily translate into a work-related limitation." *See Sandra*, 2022 WL 987734, at *4.

B.    RFC – Limitation to "perform end of the day goals."

Next, Plaintiff maintains that the RFC and hypothetical to the VE at step five "lacked definition regarding significant vocational terms . . . necessary for the VE to understand when testifying as to the suitability of work." (ECF No. 13 at 12.) Particularly, Plaintiff takes issue with the ALJ's finding that Plaintiff "was restricted to 'no production rate pace' but" could "perform end of the day goals." (*Id.* at 12-13.) Plaintiff argues the meaning of "end of the day goals" is unclear and the "VE's understanding of this limitation is unknown." (*Id.* at 13-14.) The Court is unpersuaded.

At step five, an ALJ utilizes the VE to help determine if a claimant's remaining work skills "can be used in other work" and to resolve complex vocational issues. *See* 20 C.F.R. § 404.1566(e);[13] SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). It is proper for the ALJ to rely on VE testimony in determining whether a plaintiff is disabled. *See, e.g., Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) ("The ALJ properly relied on the testimony of a vocational expert that plaintiff had residual functional capacity for a limited range of light work and there were jobs he could perform. This testimony is

---

[13] *See generally* 20 C.F.R. § 416.966 for Title XVI.

substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled."); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) ("Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof.").

Here, Plaintiff argues the RFC's reference to "end of the day goals" constituted reversable error, as there was no way to tell which of the "many rational interpretations of the RFC component described as 'end of day goals'" the VE "acknowledged and considered . . . when testifying . . . ." (ECF No. 13 at 14.) "Without defined limitations," Plaintiff argues, "it is impossible to evaluate the VE testimony to ensure the jobs cited remain valid." (*Id.*) However, Plaintiff points to no rule, regulation, or case that requires the ALJ define every phrase in the RFC. *See Bede-Morrell v. Colvin*, No. C2:13-CV-01317-JCC, 2014 WL 2807661, at *4 (W.D. Wash. May 16, 2014) (noting a similar lack of authority in context of an RFC limitation regarding "high[-]pressure, fast work, and demanding production").

The undersigned finds the reasoning of *Finley v. Colvin* persuasive on this matter. *See Finley v. Colvin*, No. CV 14-430-SDD-RLB, 2015 WL 5162476, at *4 (M.D. La. Aug. 12, 2015). In *Finley*, the claimant raised a similar argument, maintaining that the ALJ used vague terms and phrases subject to multiple interpretations in the RFC and hypothetical, and that there was no way of knowing whether the VE and ALJ "were on the same page" regarding the meaning of those terms. *Id.* The court found the claimant's arguments to be unfounded. *Id.*

14

First, there was no "evidence in the hearing transcript suggesting that the ALJ and VE were *not* 'on the same' page"—as the "VE did not ask for clarification of any of the terms challenged by Plaintiff"—nor did plaintiff cite to "any evidence suggesting that the VE was confused or in any way misunderstood the hypothetical or its terminology." *Id.* (collecting cases finding a VE's confusion must be supported by some evidence). The same is true here. Plaintiff has pointed to no evidence—and the Court has found none—indicating that the VE misunderstood the meaning of any of the phrases contained in the RFC or the hypothetical. At hearing, the VE did not ask any follow up questions or request clarification of any terms, and Plaintiff's attorney failed to object to the RFC as being vague or difficult to understand and otherwise failed to question the VE. (R. 59-63.) Essentially, Plaintiff's argument hinges on the chance that the VE *might* have been confused. This is not enough.

Second, like the terms and phrases at issue in *Finley* ("routine," "repetitive," "minimal," "work with things and data and not people"), the phrase "end of the day goals" was not so ambiguous as to "require further elaboration or clarification." *Finley*, 2015 WL 5162476, at *4 (collecting cases regarding words that have "common" usage or meaning); *see also Abraham A. v. Kijakazi*, No. 20 C 3439, 2022 WL 313758, at *6 (N.D. Ill. Feb. 2, 2022) (limitation "to meet end-of-day work goals" was not ambiguous based on a "commonsensical reading" of the RFC). The Court will, therefore, not assume, without any evidence, that the VE misunderstood its meaning. *See Montano v. Berryhill*, No. 17-CV-0458 SMV, 2018 WL 1934087, at *4-5 (D.N.M. Apr. 24, 2018) (finding reference to "end-of-day goals" proper); *Norris v. Berryhill*, No. 17-CV-03109, 2018 WL 4677767, at *3-4 (C.D. Ill. Sept. 28, 2018) (finding RFC limitation to "end of the day quota[s]" not impermissibly vague and undefined when derived from medical opinion);

*see also Yelena N. v. Kijakazi*, No. 20 C 7787, 2022 WL 3081874, at *5 (N.D. Ill. Aug. 3, 2022) (finding limitation to no hourly job quotas, but toleration of "end of day goals," to adequately account for moderate limitation in concentration, persistence, or pace). The Court finds no error in the ALJ's use of the phrase. As such, Plaintiff's arguments are without merit.

VI. **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 6th day of March, 2024.

_____
S<small>USAN</small> E. H<small>UNTSMAN</small>, M<small>AGISTRATE</small> J<small>UDGE</small>
U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small>